UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

AUTO CLUB PROPERTY-CASUALTY
INSURANCE COMPANY                                                            PLAINTIFF

v.                                                                        NO. 3:11-CV-00507-CRS-JDM

B.T., by and through his parent
and next friend SHELITA THOMAS;

D.C., by and through his parents
and next friends BRAD CAMBRON and
MELISSA CAMBRON;

BRAD CAMBRON and MELISSA CAMBRON

J.J., by and through his parent
and next friend TINA JENKINS                                        DEFENDANTS

## **MEMORANDUM OPINION AND ORDER**

The court has been asked to resolve a coverage dispute between the Plaintiff, Auto Club Property-Casualty Insurance Company ("Auto Club"), and the Defendants, Brad Cambron, Melissa Cambron, and D.C., an unmarried minor by and through his parents Brad and Melissa Cambron (collectively, "the Cambrons"); B.T., an unmarried minor by and through his parent Shelita Thomas ("B.T"); and J.J., an unmarried minor by and through his parent Tina Jenkins ("J.J."). This matter is now before the court on the cross-motions of Auto Club (DN 33), the Cambrons (DN 47), and B.T. (DN 37) for summary judgment. Fully briefed, the matter is now ripe for adjudication. For the reasons set forth below, the court will grant Auto Club's motion for summary judgment (DN 33), deny the Cambrons' motion for summary judgment (DN 47), and deny B.T.'s motion for summary judgment (DN 37).

I.     BACKGROUND

This declaratory judgment action arises from an injury sustained by B.T., a minor, after being hit in the eye with a bottle rocket. The facts of this case are not substantially in dispute. In early July 2010, Brad Cambron ("Brad") purchased fireworks in Indiana. Several of the fireworks, including some sparklers and bottle rockets, remained in Brad's car on July 5, 2010. That evening D.C., Brad's 8-year-old son, was playing outside the Cambrons' home with several minor children, including B.T. and J.J. At some point that evening, D.C. came inside the home and asked Brad if he could retrieve the sparklers from Brad's car.[1] Brad assented and proceeded to use his keyless remote to unlock the car. Brad did not follow D.C. to the car, nor did he observe which fireworks D.C. removed from the car. In addition to taking the sparklers from the car, one of the children—either D.C. or J.J.—also removed the bottle rockets. Several minors, including J.J., proceeded to ignite the bottle rockets on the Cambrons' property over the next few hours. At no time did Brad go outside to check on the children.

The incident at issue in this action arose when J.J. lit the fuse of a bottle rocket[2] and aimed it toward the garage where B.T. happened to be standing. There is some confusion as to what transpired next, but the parties do not dispute that B.T. was struck in the eye by the bottle rocket that J.J. lit. As a result of this incident, B.T. has undergone several surgeries to his eye and claims to have continuing vision impairment which will require future corrective surgeries.

No criminal charges have ever been filed against the Cambrons or J.J. However, Shelita Thomas, as parent and next friend of B.T., filed a civil action against the Cambrons and J.J. in

---

[1] D.C. and Brad allege that D.C. only requested and received permission to use the sparklers. They assert that Brad did not give D.C. permission to use the bottle rockets and D.C. knew he did not have permission to use the bottle rockets. (DN 37-3, p. 45–49, 65–66).
[2] Auto Club goes to some length to establish that the firework causing B.T.'s injury was a bottle rocket. Because the parties do not seem to dispute this fact, the court will proceed on the assumption that B.T. was struck by a bottle rocket.

Jefferson Circuit Court in August 2011, seeking damages for B.T's injuries.[3] (DN 1-4). To defend against that suit, the Cambrons sought coverage under an insurance policy issued to them by Auto Club (hereinafter, the "Policy"). The Policy provided for personal liability coverage and medical expense payments for the period between March 3, 2010 and March 3, 2011. Under its terms, the Policy provided coverage to "Insured Person(s)," which it defined as the person named on the Policy's Declaration Certificate, a resident relative of the person named on the Declaration Certificate, and a person under age 18 residing in the household of the person named on the Declaration Certificate. (DN 1-5, p. 5). Melissa Cambron is an "insured person" because she is listed on the Policy's Declaration Certificate (DN 33-2), and both Brad and D.C. are "insured persons" because they are resident relatives of Melissa Cambron.

Auto Club filed this action against the Cambrons, B.T., and J.J, seeking a declaration that it is under no duty to defend, pay, provide coverage to, or indemnify the Cambrons for any claim that has been or could be filed by or on behalf of B.T. relating to the incident on July 5, 2010. (DN 1). Before the court are the parties' cross-motions for summary judgment.

## II. STANDARD

A court may grant a motion for summary judgment if it finds that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party thereafter must produce specific facts

---

[3] The complaint includes causes of action for premises liability, direct negligence, negligent entrustment, negligent supervision on the part of Brad and Melissa Cambron, negligence on the part of D.C., and negligence on the part of J.J. (DN 1-4).

demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986).

The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962). However, the nonmoving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party cannot rely upon the assertions in its pleadings; rather that party must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. It must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252. On cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broad. Co. v. U.S*., 929 F.2d 240, 248 (6th Cir. 1991) (citations omitted).

### III. DISCUSSION

In their cross-motions for summary judgment, the parties seek an order defining their rights and obligations under the Policy. Specifically, Auto Club seeks a declaration that it is not obligated to defend and indemnify the Cambrons for any claims asserted against them relating to the events of July 5, 2010.

In order to determine coverage, the court must interpret the language of the Policy and the exclusions listed within it. Pursuant to the terms of the Policy, Auto Club will "pay damages for which an insured person is legally liable because of bodily injury or property damage . . . ." (DN 1-5, p. 15). Auto Club cites to four exclusions contained in the Policy to support its assertion that it is not obligated to defend or indemnify the Cambrons in the underlying Jefferson Circuit Court action. These exclusions state that Auto Club is not obligated to cover bodily injury or property damage: (1) resulting from a criminal act or omission ("Criminal Act Exclusion"); (2) resulting from an act or omission which is intended or could reasonably be expected to cause bodily injury ("Intentional Act Exclusion"); (3) arising out of negligent supervision ("Negligent Supervision Exclusion"); or (4) arising out of negligent entrustment ("Negligent Entrustment Exclusion"). (DN 1-5, p. 16–17). The Cambrons maintain that these exclusions contain vague and undefined terms that must be interpreted in their favor to allow for coverage under the Policy. (DN 39-1, p. 2–3).

In Kentucky, the interpretation of an insurance policy is a matter of law for the court. *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810 (Ky. Ct. App. 2000). Unless the terms contained in the policy have acquired a technical meaning in law, they "must be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured." *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205, 206 (Ky. 1986); *see also Stone*, 34 S.W.3d at 811. Thus, an insurance policy is to be construed liberally in favor of the insured, and if there is doubt or uncertainty as to its meaning and it is susceptible to two interpretations, the court must adopt the one more favorable to the insured. *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994). In the

absence of ambiguities, the terms of an insurance policy will be enforced as written. *Osborne v. Unigard Indem. Co.*, 719 S.W.2d 737, 740 (Ky. Ct. App. 1986); *Woodard v. Calvert Fire Ins. Co.*, 239 S.W.2d 267, 269 (Ky. 1951).

Under Kentucky law, the burden is on the party seeking to establish coverage to prove that the incident was within the scope of the policy. *Secura Ins. Co. v. Gray Constr., Inc.*, 717 F. Supp. 2d 710, 714–15 (W.D. Ky. 2010) (citation omitted). However, "the burden is on the insurer to establish that an exclusion bars coverage," *id.* at 715 (citations omitted), and the applicability of a policy exclusion is a question of law for the court to resolve. *State Auto. Mut. Ins. Co. v. Security Taxicab, Inc.*, 144 F. App'x 513, 517 (6th Cir. 2005) (citing *MGA Ins. Co., Inc. v. Glass*, 131 S.W.3d 775 (Ky. Ct. App. 2004)) ("[T]he rule Kentucky courts appear to have applied[] is that where the facts are undisputed and the only issue is whether the facts meet the policy definition, only a question of law for the court is presented."). "Once the insurer has shown that application of an exclusion, the burden shifts back to the insured." *Secura Ins. Co.*, 717 F. Supp. 2d at 715 (citations omitted).

Auto Club first argues that the Criminal Act Exclusion releases it from any duty to defend or indemnify the Cambrons. This exclusion states that Auto Club "will not cover" claims for:

> 10. ***bodily injury*** or ***property damage*** resulting from:
>
>    a. a criminal act or omission committed by anyone; or
>    b. an act or omission, criminal in nature, committed by an ***insured person*** even if the ***insured person*** lacked the mental capacity to:
>       (1) appreciate the criminal nature or wrongfulness of the act or omission; or
>       (2) conform his or her conduct to the requirements of the law; or
>       (3) form the necessary intent under the law.
>
> This exclusion will apply whether or not anyone, including the ***insured person***:

-6-

        a. is charged with a crime;
        b. is convicted of a crime whether by a court, jury or plea of nolo contendere; or
        c. enters a plea of guilty whether or not accepted by the court

(DN 1-5, p. 17) (bold in original).

The Cambrons and B.T. argue that this exclusion is ambiguous because the terms "criminal" and "crime" are not defined within the Policy, and they ask that the court apply the doctrine of reasonable expectations to interpret the exclusion in their favor. In particular, B.T. argues that the court should adopt the Model Penal Code's definition of "crime" as a "misdemeanor or a felony." KRS § 500.080(2). However, the doctrine of reasonable expectations only applies if policy language is ambiguous. *Hendrix v. Fireman's Fund Ins. Co.*, 823 S.W.2d 937, 938 (Ky. Ct. App. 1991).

In this case, the doctrine of reasonable expectations need not be applied because the language of the Criminal Act Exclusion is unambiguous. Although B.T. points to two cases to support his argument that the exclusion is ambiguous, neither case is applicable to the facts of the case at bar. *See Am. Family Life Assurance Co. v. Bilyeu*, 921 F.2d 87 (6th Cir. 1990); *Healthwise of Ky., Ltd. v. Anglin*, 956 S.W.2d 213 (Ky. 1997). Those cases involved commercial insurance policies and accidental death policies, as opposed to homeowner's insurance policies, where coverage was excluded if the insured "committed" a crime. In both cases the insured was alleged to have violated traffic regulations by driving under the influence of alcohol and drag racing, respectively. Such violations are specifically excluded from the Model Penal Code's definition of "crime," to which B.T. cites as the appropriate authority. *See* KRS § 500.080(10). Further, when confronted with language identical to that used in the Cambrons' Policy, courts in other jurisdictions found such language to be unambiguous. *See, e.g.*, *Auto Club Grp. Ins. Ass'n*

*v. Andrzejewski*, 808 N.W.2d 537 (Mich. Ct. App. 2011); *Auto Club Ins. Ass'n v. Hatchett*, 2007 WL 1228638 (Mich. Ct. App. Apr. 26, 2007).

The parties next dispute whether a "criminal act" was committed. Auto Club contends that Brad and the "minor children" violated Kentucky law by possessing, using, and exploding the bottle rockets outside the Cambrons' home, and that these were criminal acts which require application of the Criminal Act Exclusion. (DN 33-1, p. 18). Conversely, the Cambrons and B.T. argue that neither the Cambrons' possession of the bottle rockets nor J.J.'s use and explosion of the bottle rockets could be considered a crime so as to trigger the application of the Criminal Act Exclusion.

At the time of the incident,[4] bottle rockets (also known as "sky rockets") were defined as "aerial devices" and considered "common fireworks." KRS § 227.702(2). "Common fireworks,"[5] including bottle rockets, were not legal for retail sale in Kentucky and could not be possessed, used, and/or exploded in Kentucky unless the operator was granted a permit for a supervised public display of fireworks. KRS §§ 227.708(2), 227.710  A person who violated these provisions could face a $1,000 maximum fine or imprisonment for up to thirty days. *See* § KRS § 227.990(4).

The parties focus their arguments on KRS § 227.710, entitled "sale or use of fireworks prohibited," which generally prohibits a person from possessing, using, or exploding fireworks—

---

[4] In July 2011, the Kentucky legislature changed the laws applicable to the sale and use of fireworks. For the purposes of this Memorandum Opinion, the court will apply the laws relating to the sale and use of fireworks that were in effect on July 5, 2010.

[5] In July 2010, Kentucky defined "fireworks" as "any composition or device for the purpose of producing a visible or an audible effect by combustion, deflagration, or detonation, and which meets the definition of 'common' or 'special' fireworks as set forth in the United States Department of Transportation's (DOT) hazardous materials regulations." KRS § 227.700. The DOT regulations in force at the time of the enactment of KRS § 227.700 defined "common fireworks" as Class C explosives, as did KRS § 227.702. *See* 49 C.F.R. § 173.108 (1982); KRS § 227.702 (treating bottle rockets as "[c]ommon fireworks [which] are classified as class C explosives by the United States Department of Transportation"). Thus, bottle rockets fit within the definition of "fireworks" under KRS § 227.710 because they are Class C explosives.

-8-

including bottle rockets—subject to certain exceptions. KRS § 227.710. One such exception allows certain city or county officials to grant permits for "supervised public displays of fireworks." *Id.* Auto Club interprets this statute as meaning that it is a crime for a person to possess, use, or explode bottle rockets in Kentucky.[6] It argues that the Cambrons violated this statute by possessing bottle rockets, and that J.J. violated this statute by using or exploding bottle rockets. Accordingly, Auto Club maintains that the Cambrons and J.J. committed criminal acts when they possessed, used, and/or exploded the bottle rockets.

Yet under the Cambrons' and B.T.'s reading of this statute, the alleged crime that was committed was the possession, use, and/or explosion of bottle rockets *without a permit*. In their view, the fireworks statute prohibits the possession, use, and/or explosion of bottle rockets when the possessor or user does not have a permit to possess, use, and/or explode bottle rockets. Therefore, they argue, B.T.'s injury did not actually result from the Cambrons' and J.J.'s lack of a permit to possess, use, and/or explode bottle rockets. Rather, they maintain that the Cambrons' act of allowing minors to access the bottle rockets and J.J.'s ignition of the bottle rocket were "independent acts of negligence." (DN 37-2, p. 19).

The court, however, agrees with Auto Club's interpretation of KRS § 227.710. We find that the statute proscribes the possession, use, or explosion of bottle rockets, rather than the failure to obtain a permit. Thus, the Cambrons and J.J. were in violation of KRS § 227.710 when they possessed, used, and/or exploded the bottle rockets.[7]

The court must now decide whether a violation of KRS § 227.710 constitutes a "criminal act" so as to trigger the application of the Criminal Act Exclusion. In his motion for summary

---

[6] For the purposes of this motion, the court will disregard the affidavit of William "Bill" Swope, which Auto Club included with its motion for summary judgment. (*See* DN 33).
[7] Brad admits that he was in possession of the bottle rockets, and the parties do not dispute that J.J. used and exploded the bottle rocket that injured B.T. (*See* DN 37-3, p. 45–46).

judgment, B.T. asks the court to adopt the Kentucky Model Penal Code's definition of crime, in which "crime" is defined as a "misdemeanor or felony." KRS § 500.080(2). A misdemeanor is further defined as "an offense, other than a traffic infraction, for which a sentence to a term of imprisonment of not more than twelve (12) months can be imposed." KRS § 500.080(10). As noted above, the Kentucky firework statutes provide that a person who violates "KRS §§ 227.702 to 227.750 . . . shall be fined not more than one thousand dollars ($1,000), or imprisoned in the county jail for not more than thirty (30) days, or both." KRS § 227.990(4). Therefore, the Cambrons' and J.J.'s actions of possessing, using, and exploding bottle rockets in violation of KRS § 227.710 was a misdemeanor, as that term is defined in the Model Penal Code, KRS § 500.080(10), because it is an offense for which a sentence of not more than twelve months can be imposed. Thus, their violation of KRS § 227.710 also fits the Model Penal Code's definition of "crime." *See Healthwise of Ky., Ltd. v. Anglin*, 956 S.W.2d 213, 216–17 (Ky. 1997).

Auto Club has alleged facts which show that the Cambrons committed the criminal act of possessing bottle rockets and that J.J. committed the criminal act of using and exploding bottle rockets in violation of KRS § 227.710. Therefore, Auto Club can invoke the criminal act exclusion if it can also show that B.T.'s injury resulted from the Cambrons' possession or J.J.'s use and explosion of the bottle rockets. The parties do not appear to dispute that B.T.'s injury resulted from either the Cambrons' possession or J.J.'s use and explosion of the bottle rockets. Therefore, the court finds that Auto Club can invoke the Criminal Act Exclusion to deny coverage to the Cambrons. Having found the Cambrons' claims barred by the Criminal Act Exclusion, this court finds it unnecessary to determine whether coverage is precluded by the remaining exclusions enumerated by Auto Club as grounds for denying coverage.

## IV. CONCLUSION

For the reasons set forth herein this date and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that Auto Club's motion for summary judgment (DN 33) is **GRANTED** and the Cambrons' and B.T.'s motions for summary judgment (DNs 47, 37) are **DENIED**. A separate order and judgment will be entered this date in accordance with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

January 28, 2014

Charles R. Simpson III, Senior Judge
United States District Court